Eric P. LIGHT and Connie Light, on behalf of Themselves and All Others Similarly Situated, Appellants/Cross–Appellees,

v.

CITY OF LOUISVILLE, Kentucky; and David L. Armstrong, as Mayor of the City of Louisville, Kentucky, Appellees/Cross–Appellants.

Nos. 2001–CA–001310–MR, 2001–CA–001402–MR.

Court of Appeals of Kentucky.

Sept. 20, 2002.

Case Ordered Published by Court of Appeals Dec. 27, 2002.

Timothy J. Eifler, Walter L. Sales, Kenneth L. Sales, Louisville, KY, for appellants/cross-appellees.

Thomas J. Luber, Mitzi D. Wyrick, Louisville, KY, for appellees/ cross-appellants.

Before BARBER, GUDGEL, and KNOPF, Judges.

## OPINION

GUDGEL, Judge.

This is an appeal and cross-appeal from an order entered by the Jefferson Circuit Court dismissing Eric P. Light and Connie Light's (appellants') action challenging a tax rate fixed by the City of Louisville (city) in levying ad valorem real property taxes. For the reasons stated hereafter, we reverse and remand for further proceedings.

The city annually levies ad valorem taxes based upon the real property assessments of the Jefferson County Property Valuation Administrator (PVA). Since it relies on the PVA's assessments, the city is required by KRS Chapter 132 to satisfy

certain prerequisites before increasing the real property tax rate for any given year. Appellants, who assert that the city failed to timely satisfy such prerequisites before increasing real property tax rates for the 1998 and 1999 tax years, sought reimbursement of the difference between the taxes they and other similarly-situated Louisville taxpayers actually paid and the amounts they allegedly should have paid for those years. The city denied appellants' claim and advised them that they had a right to appeal to the Kentucky Board of Tax Appeals (KBTA).

Appellants instead filed this class action, seeking a declaration of rights as well as refunds on behalf of themselves and all similarly-situated Louisville real property owners. The city filed a motion to dismiss the action, claiming that the KBTA was vested with jurisdiction over the dispute, and that appellants had therefore failed to first exhaust their administrative remedies as required by law. Further, the city argued that appellants were not entitled to seek refunds by a class action in any event. The trial court agreed that the KBTA had jurisdiction over the dispute and granted the motion to dismiss on the ground that appellants failed to exhaust their administrative remedies. However, the court did not address the class action issue. This appeal and cross-appeal followed.

■ Appellants contend that the trial court erred by finding that the KBTA had jurisdiction over this dispute. They assert that unlike the taxpayers in *Bischoff v. City of Newport*, Ky.App., 733 S.W.2d 762 (1987), they exhausted their administrative remedies by filing a claim requesting the city to refund the alleged overpayment. We agree.

KRS 131.340(1) vests the KBTA with "exclusive jurisdiction to hear and determine appeals from final rulings, orders, and determinations of *any agency of state*

*or county government affecting revenue and taxation.*" (Emphasis added.) Although neither party argues that the city is an arm of county government, the city argues that it operates as an "agency of state ... government" for purposes of ad valorem real property taxation. KRS 131.340(1).

Appellants and the city both rely on *Board of Education of Russellville Independent Schools v. Logan Aluminum, Inc.*, Ky., 764 S.W.2d 75 (1989). There, the Kentucky Supreme Court found that the KBTA correctly declined to exercise jurisdiction to decide a dispute concerning a utility tax imposed by local school districts, as such school districts are not agencies of the state for purposes of the statutes which establish and implement the KBTA. The court held:

> The Kentucky Board of Tax Appeals and KRS 131.340(1) are structured as part of the Chapter of statutes organizing the Department of Revenue. It provides for an administrative appeal from decisions regarding "revenue and taxation" of agencies serviced by the Department of Revenue. It is part of Title XI, "Revenue and Taxation," covered in Chapters 131–143A, which collectively deals with taxes imposed by the central state government and administered by the Department of Revenue. Taxes imposed solely by local entities, be they city, county or special district, are dealt with elsewhere. *We conclude that the General Assembly intended the Kentucky Board of Tax Appeals to have jurisdiction only over issues involving revenue and taxation matters to be addressed by an administrative arm of central state government. By this we mean the administration of taxes such as the state ad valorem tax, the income tax, the corporations' license tax, the sales and use tax, and selective excise*

*taxes. These are the subject matter of KRS Chapter 131–143A, codified as "Title XI: Revenue and Taxation."* (Emphasis added.)

764 S.W.2d at 78.

Here as in *Logan, id.* at 77, the issue on appeal concerns whether the city is "an 'agency of state' for purposes of the statutes establishing and implementing" the KBTA. Although KRS Chapter 132 permits a city to base its real property taxes on the annual property assessments made by the local PVA for state taxation purposes, and although various provisions of that chapter refer to city tax rates and revenues, in our view those references, without more, do not amount to the addressing of city revenue and taxation matters "by an administrative arm of central state government." 764 S.W.2d at 78. Indeed, the mere fact that the city may choose to rely on PVA assessments rather than incur the expense of acquiring such information itself, and the fact that the city must comply with certain statutory guidelines before increasing its real property tax rates, do not compel a finding that city taxes involve "revenue and taxation matters to be addressed by an administrative arm of central state government" so as to fall within the jurisdiction of the KBTA. *Id.* at 78.

■ Moreover, the city's claim that it is a state agency for taxation purposes conflicts with the distinction made in *Logan* between purely local taxes and purely state government taxes. Although it is true that all taxing power originally emanates from the state, the exercise of such power which has been granted for local purposes falls "within the discretion of the city governing authority." *See, e.g., City of Newport v. Pennsylvania R. Co.,* 287 Ky. 613, 154 S.W.2d 719, 723 (1941). Simply put, it is clear that the city is not an agency "serviced by the Department of Revenue" for purposes of local ad valorem real property taxes, and that such taxes do not come within the ambit of "the subject matter of KRS Chapter 131–143." 764 S.W.2d at 78.

Further, we are not persuaded by the argument that jurisdiction over municipal ad valorem real property taxes is conferred upon the KBTA by KRS 134.590, which governs the methods which may be used to obtain refunds of excessive or unconstitutional ad valorem tax payments. KRS 134.590(1) and (2) address the refund of taxes paid to state agencies, while subsections (3) through (6) address the refund of "city, urban-county, county, school district, or special district ad valorem taxes." Most pertinent to this appeal is KRS 134.590(6), which permits the refund of ad valorem taxes only if they are unconstitutional, or if "the taxpayer has properly followed the administrative remedy procedures established through the protest provisions of KRS 131.110, the appeal provisions of KRS 133.120, the correction provisions of KRS 133.110 and 133.130, or other administrative remedy procedures." Although the city argues that a taxpayer's appeal from an administrative denial of a refund must be taken to the KBTA rather than to the circuit court, our review of the statutes cited in KRS 134.590(6) establishes that each of those statutes refers to disputes concerning PVA assessments rather than to disputes involving city tax rates. Hence, we conclude that there is no merit to the city's contention that KRS 134.590 expands the KBTA's jurisdiction to include appeals such as the one involved in the instant action.

We also conclude that the trial court erred by finding that the KBTA has jurisdiction over this dispute because the city's ad valorem tax is part of an integrated state tax system. Although a city which

chooses to utilize PVA. valuation assessments must adhere to certain steps before it may increase its ad valorem real property tax rate, the city sets that tax rate, and the tax money collected is retained by the city and does not enter the state revenue system. Moreover, although KRS 133.120(10) specifically requires appeals from PVA assessments to be taken to the KBTA, the method for appealing city ad valorem tax rates is not mentioned in KRS Chapters 131–143. Given this fact, we are simply not convinced that the city's ad valorem real property tax rate is part of our integrated state tax system, or that this action contesting such rates falls within the KBTA's jurisdiction. We hold, therefore, that appellants fully exhausted their administrative remedies by seeking a refund of the property taxes paid from the city, and that the trial court erred by dismissing this action on the ground that the KBTA had exclusive jurisdiction over this dispute.

On cross-appeal, the city contends that appellants do not have a right to seek tax refunds by way of a class action. However, this issue was not addressed by the trial court and we decline to address it for the first time on appeal, especially since the trial court will have an opportunity to do so on remand.

The court's order is reversed and this cause is remanded for further proceedings consistent with our views.

ALL CONCUR.